## HENRY BRADLEY ROBINSON v.
## UNITED STATES CASUALTY COMPANY.

(Filed 9 October 1963.)

**1. Automobiles § 2; Judgments § 18—**

The suspension or revocation of an automobile driver's license by the Department of Motor Vehicles is a quasi-judicial act and cannot be collaterally attacked.

**2. Same; Perjury § 6—**

The driver of an automobile may not sue his insurer for damages resulting from the revocation of his driver's license allegedly resulting from the false representation of his insurer that the driver did not have insurance in force at the time he was involved in an accident. G.S. 20-166.1(b), G.S. 20-279.4, G.S. 20-279.5, since such action amounts to a collateral attack upon the order of the Commissioner suspending the license and is based on subornation of perjury.

APPEAL by plaintiff from *Latham, S.J.,* April 8, 1963 Special Civil "A" Session of MECKLENBURG.

Defendant demurred to the amended complaint for failure to state a cause of action. The demurrer was sustained. Plaintiff appealed.

*J. Grover Lee, Jr., and Thomas H. Lee for plaintiff appellant.*
*Carpenter, Webb & Golding by William B. Webb for defendant appellee.*

RODMAN, J. The allegations of the amended complaint, liberally interpreted, may be summarized thus: (1) Plaintiff, on 6 May 1959, purchased from defendant an automobile liability insurance policy providing protection in the sum of $20,000 for injury to or death of one person, $40,000 for injuries or deaths resulting from a single accident, and $5,000 property damage resulting from the negligent use of his 1953 Mercury automobile. The policy was sufficient to comply with the requirements of the Motor Vehicle Safety and Financial Responsibility Act of 1953. (2) On 15 May 1959 plaintiff, while operating his Mercury automobile "was involved in a motor vehicle collision at the intersection of Colonial and Crescent Avenues in the City of Charlotte. . . ." (There is no specific allegation that personal injury or death or property damage in excess of $100 resulted from the collision.) The policy of insurance issued by defendant was in full force and effect when the collision occurred. (3) "That shortly after said collision, the defendant insurance company fraudulently, maliciously, wrongfully, wantonly and willfully caused and procured the wrongful revocation of the plaintiff's Driver's License through the

North Carolina Department of Motor Vehicles by fraudulently representing to said department that it, The United States Casualty Company, did not insure the plaintiff against automobile liability at the time of the aforesaid accident.

"That the plaintiff is informed and believes and so alleges that on or about June 16, 1959, the defendant insurance company with full knowledge that it was on the risk for the plaintiff's accident on May 15, 1959 and on repeated dates prior to July 16, 1959 did through its agents and employees acting within the scope of their agency and authority did fraudulently misrepresent to the Department of Motor Vehicles of the State of North Carolina that the plaintiff did not have any automobile liability insurance in force with the defendant insurance company on May 15, 1959 and in making such representations to the plaintiff and the Department of Motor Vehicles acting for the citizenry of North Carolina the defendant insurance company knew that such representations were false, untrue and deceitful and that in so doing with full knowledge of the consequences the defendant insurance company did fraudently, maliciously and deceitfully intend to deceive the plaintiff and the people of North Carolina by denying the existence of the plaintiff's automobile liability insurance coverage which had been in full force and effect since May 6, 1959 and was in full force and effect on May 15, 1959 as the defendant well knew; that the Department of Motor Vehicles acting for the plaintiff as a citizen of North Carolina did rely upon the false representations of the defendant insurance company; and that as the result of such reliance on said fraudulent and deceitful representations willfully, wantonly and maliciously made by the defendant insurance company as herein alleged the plaintiff did sustain the loss, injury and damage as alleged in paragraph twelve (12) of this Complaint."

(4) "That as the direct and proximate result of the malicious, fraudulent and wrongful acts of the defendant insurance company, as alleged aforesaid, the plaintiff has been deprived of his driving privileges since July 16, 1959, and the plaintiff has thereby been damaged in the sum of Eight Hundred Fifty and no/100 Dollars ($850.00) which money has been actually expended by him for transportation necessary to and from his work during all of the time since the wrongful revocation of his Driver's License caused by the fraudulent acts of the defendant insurance company in having said license revoked."

In disposing of the appeal we treat the complaint as alleging personal injury, death, or property damage in excess of $100 resulting from the collision.

G.S. 20-166.1(b) imposes the duty on the operator of a motor vehicle to notify the Department of a collision in which he is involved which results in personal injuries, death, or property damage in excess of $100. The operator is required by G.S. 20-279.4 to inform the Department when he notifies it of the accident whether he carried liability insurance or was exempt from the statutory provision.

G.S. 20-279.5 makes it the duty of the Commissioner of Motor Vehicles to suspend the driver's license if the owner-operator fails to discharge his liability for the damage resulting from the collision. The license cannot be suspended if the owner "had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident." G.S. 20-279.5(c)1.

The Commissioner is expressly required to give the owner or operator ten days' notice of the proposed date of suspension. G.S. 20-279.5(b) That section further provides: "Where erroneous information is given the Commissioner with respect to the matters set forth in subdivisions 1, 2 or 3 of section (c) of this section or with respect to the ownership or operation of the vehicle, the extent of the damage and injuries, or any other matters which would have affected the Commissioner's action had the information been previously submitted, he shall take appropriate action as hereinbefore provided, within sixty days after receipt by him of correct information with respect to said matters." This statutory provision gave to plaintiff full opportunity to present his evidence to the Commissioner to establish the fact that he did carry insurance as required.

The act of the Commissioner in suspending plaintiff's license was quasi-judicial. It cannot be collaterally attacked. *Beaver v. Scheidt, Comr. of Motor Vehicles*, 251 N.C. 671, 111 S.E. 2d 881.

Not only was plaintiff entitled to a hearing before the Commissioner on the factual question of whether he was, as he now alleges, insured by defendant; but he was entitled upon an adverse finding by the Commissioner to appeal to the Superior Court where the right to suspend would be heard *de novo*. The filing of a petition to review the Commissioner's order is the equivalent of a supersedeas suspending the order until the question at issue has been determined by the Superior Court. G.S. 20-279.2(b).

In substance plaintiff claims the right to recover damages because of false testimony given in a quasi-judicial proceeding, which testimony resulted in a finding and adjudication adverse to him. He asserts this right notwithstanding his failure to challenge the truthfulness of the testimony when he had an opportunity to do so. He does not allege he has ever sought to vacate the order of the Commissioner

revoking his driver's license. Public policy forbids the maintenance of such an action. *Gillikin v. Springle*, 254 N.C. 240, 118 S.E. 2d 611; *Gillikin v. Bell*, 254 N.C. 244, 118 S.E. 2d 609; *Brewer v. Coach Co.*, 253 N.C. 257, 116 S.E. 2d 725; *Hocker v. Welti*, 239 Ill App 392. As said by Clark, C. J., in *Godette v. Gaskill*, 151 N.C. 52, 65 S.E. 612: "[I]t would multiply and extend litigation if the matter could be re-examined by a new action between a party to the action and a witness therein; and, more than that, witnesses would be intimidated if their testimony is given under liability of themselves being subjected to the expense and annoyance of being sued by a party to the action to whom their testimony might not be agreeable. It would give a great leverage to litigants to intimidate witnesses."

The court properly sustained the demurrer since plaintiff has not and cannot state a cause of action based on subornation of perjury resulting in the loss of his driver's license.

Affirmed.