**Gerald Laran COOPER, Appellant,**

v.

**Garlanda PARKER–HUGHEY, M.D., Appellee.**

No. 79863.

Supreme Court of Oklahoma.

April 11, 1995.

Gerald L. Cooper, McAlester, pro se.

Robert H. Mitchell and Johnny J. Akins, Robert H. Mitchell & Associates, Oklahoma City, for appellee.

SIMMS, Justice:

Gerald Laran Cooper appeals the district court judgment dismissing his cause of action for tortious perjury against appellee, Garlanda Parker–Hughey, M.D. The district court dismissed the action on two grounds: (1) Dr. Parker–Hughey was entitled to absolute immunity from suit in her capacity as a prosecution witness, and (2) Cooper failed to prosecute the civil action by failing to appear on the day of trial. The Court of Appeals affirmed on the failure to prosecute ground and also held that an action for tortious perjury is not recognized in Oklahoma.

Certiorari is granted to consider the question of immunity and whether the tort of perjury exists because the Court of Appeals' opinion questions and conflicts with the holding in *Copeland v. Anderson,* 707 P.2d 560 (Okla.App.1985), another opinion of the Court of Appeals.

Because we hold that a prosecution witness in a criminal trial is immune from civil liability for damages caused by their testimony, and further that the civil tort of perjury is *not* recognized in this State, the opinion of the Court of Appeals in this case is vacated, the judgment of the district court is affirmed, and *Copeland v. Anderson,* 707 P.2d 560 (Okla.App.1985), is overruled. The pertinent facts follow.

Cooper was charged, tried and convicted of raping an eight-year old girl in Oklahoma County. Dr. Parker–Hughey testified as an expert medical witness for the state in the trial. Cooper remains incarcerated at this time.

About one year after his conviction, Cooper brought a civil rights action against Dr. Parker–Hughey and others in federal district court. The federal complaint was based upon 42 U.S.C. § 1983, and alleged Cooper's civil rights were violated by Dr. Parker–Hughey's allegedly perjured testimony. The federal court dismissed the action on the grounds that Dr. Parker–Hughey was

> "absolutely immune from liability for such testimony, in recognition of her function in the trial as one of the 'integral parts of the judicial process.'... Defendant Parker–Hughey's immunity extends to her even if such testimony was perjured."

Cooper at first gave Notice of Intent to Appeal this determination, but later withdrew the appeal. He then filed an action in state court with the same basic allegations of perjury. That action was dismissed by the district court for lack of personal jurisdiction because Cooper never personally served Dr. Parker–Hughey. Cooper filed an appeal of the district court's dismissal, but the Court of Appeals dismissed it finding jurisdictional defects in his Petition in Error.

Cooper then filed the present action in state district court making the same allegations as in the other lawsuits. This time Cooper managed to serve Dr. Parker–Hughey personally, and the trial court issued its scheduling order setting out the discovery and motion deadlines as well as the pre-trial

conference date. The record discloses that two applications for writs of habeas corpus ad testificandum were filed by Cooper. One was requested for his appearance at a hearing on a Motion to Compel Discovery he filed. The other was for the purpose of appearing at the pre-trial conference. Without comment, the trial court did not grant the writs. No other writs of habeas corpus ad testificandum appear in the record.

The trial court failed to comply with the mandates of *Johnson v. Scott,* 702 P.2d 56 (Okl.1985) and *Mitchell v. Meachum,* 770 P.2d 887 (Okl.1988), it was at most harmless error in light of the holding in this case that alleged perjury does not give rise to an action in tort.

Cooper did not appear on the date of trial, and the trial court dismissed the action holding Dr. Parker–Hughey was entitled to judgment dismissing the action on the issue of absolute immunity as well as for Cooper's default and failure to prosecute. It is from this judgment and dismissal that Cooper now appeals.

Absolute immunity from civil liability for damages resulting from the testimony of witnesses in criminal prosecutions was well established in English common law. *See Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), and English cases cited therein. In *Briscoe,* the U.S. Supreme Court affirmed this absolute immunity in a civil rights action brought by persons convicted of sexual assault in state court. The convicted defendants sued police officers who testified against them alleging the police officers violated their constitutional rights to due process and a fair trial by testifying that the criminal defendants had been able to harmonize their stories. The result of this allegedly false testimony was that the exculpatory statements of each criminal defendant were rendered less credible. The Court held that the police officers were immune from liability for any damages resulting from their testimony as witnesses in the criminal prosecution.

In addressing the question of witness immunity, the Court stated:

"[I]n damages suits against witnesses, 'the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible.' *Calkins v. Sumner,* 13 Wis. 193, 197 (1860). A witness's apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. See *Henderson v. Broomhead, supra,* 157 Eng. Rep., at 968. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. See *Barnes v. McCrate,* 32 Me. 442, 446–447 (1851). ... A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence. See Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum.L.Rev. 463, 470 (1909). But the truth-finding process is better served if the witness's testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.' *Imbler v. Pachtman,* 424 U.S. 409, 440, 96 S.Ct. 984, 999, 47 L.Ed.2d 128 (1976) (WHITE, J., concurring in the judgment)." 460 U.S. at 332–34, 103 S.Ct. at 1114–115 (Citations omitted).

■ The court in *Briscoe* further indicated that the policy behind absolute immunity is to protect the judicial process. " 'Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.' " 460 U.S. at 335, 103 S.Ct. at 1115 [quoting *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978) ]. In short, the U.S. Supreme Court reaffirmed the common law absolute immunity afforded to witnesses in judicial proceedings for damages resulting from their testimony. We agree that this witness immunity best serves the judicial system and the greater public interest of keeping the "paths which lead to the ascertainment of

truth ... as free and unobstructed as possible." 460 U.S. at 332, 103 S.Ct. at 1114.

The Legislature has codified this immunity from defamation suits in 12 O.S. 1991, § 1443.1, which deems any communication made during a judicial proceeding a privileged communication immune from suit for libel. It reads:

"A. A privileged publication or communication is one made:

First. In any legislative or judicial proceeding or any other proceeding authorized by law;

\* \* \* \* \* \*

B. No publication which under this section would be privileged shall be punishable as libel." [1]

Under this statute and its predecessor, we have held that attorneys, parties and witnesses are immune from defamation suits where those suits are based upon communications made during or preliminary to judicial proceedings as long as the communication is in some way relevant to the proceeding. *Kirschstein v. Haynes,* 788 P.2d 941, 948 (Okla.1990); *Hammett v. Hunter,* 189 Okla. 455, 117 P.2d 511 (1941). In *Hammett,* the Syllabus by the Court reads:

"1. Defamatory words published by the parties, counsel or witnesses, in due course of a judicial proceeding and which are connected with, or relevant or material to, the cause in hand or subject of inquiry, constitute an absolutely privileged communication, and *no action will lie therefor, however false or malicious they may in fact be.*" 117 P.2d at 511 (Emphasis added).

The public policy undergirding the common law immunity for witnesses in judicial proceedings is well-supported and compelling. A witness must be free to testify without the fear of facing a civil action for his or her testimony. The immunity serves the judicial process by encouraging witnesses to testify without shading their testimony in favor of the party who might sue them. Therefore, we embrace the common law immunity for witnesses in judicial proceedings from civil action based upon the testimony

given in those judicial proceedings. The trial court did not err in granting judgment to Dr. Parker–Hughey on the grounds that she was immune from suit based upon her testimony in the conviction of Cooper.

Although the judgment of the trial court is affirmed on the immunity issue, we must also address the issue of the tort of perjury and overrule *Copeland v. Anderson,* 707 P.2d 560 (Okla.App.1985), in which the Court of Appeals determined that civil liability for the tort of perjury lies in Oklahoma. The case involved a divorce in which the husband allegedly concealed information and testified falsely about the possible acquisition of an interest in a restaurant. The wife alleged that this false testimony impacted the amount of her award. The trial court sustained the husband's demurrer on this perjury cause of action, and the plaintiff appealed.

The Court of Appeals determined that Okla. Const. art. 2, § 6, and certain Oklahoma statutes, 76 O.S.1981, §§ 1 through 4, when read with 23 O.S.1981, § 3, authorize an action for perjury. After dismissing the common law immunity afforded witnesses as an archaic relic of English common law that the courts of the United States errantly adopted, the *Copeland* court criticized the overwhelming majority of jurisdictions for continuing to follow a rule of law that had no compelling rationale behind it. Although recognizing that Maine, the only jurisdiction to allow an action for perjury, had a statute authorizing such an action, the *Copeland* court criticizes those jurisdictions denying recovery for perjury as having failed to consider "state constitutional and statutory provisions or analogous decisional law contrary to the English view." 707 P.2d at 566. The provisions to which the court refers can only be ones similar to those cited above, Okla. Const. art. 2, § 6, and the statutes from titles 76 and 23.

However, these statutory and constitutional provisions do not establish or condone an action for perjury. The main argument of the court was that 76 O.S.1981, §§ 3 and 4 encompass an action for perjury, how-

---

1. For a discussion of this statute, *see Kirschstein v. Haynes,* 788 P.2d 941, 948 n. 8 (Okla.1990), and *In re Application of Sanger,* 865 P.2d 338, 341 n. 14 (Okla.1993).

ever, these statutes describe an action for deceit or fraud. Title 76 O.S.1981, § 2, permits one damaged by another's deceit to receive damages. It provides:

"One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

Yet this provision permits recovery for one deceived by another. In the case at bar, if Dr. Parker–Hughey did lie on the stand, then she deceived the jury rather than Cooper, and Cooper cannot rely on the deceit practiced upon the jury as deceit practiced upon himself. In addition, the court read this statute to include injury to *another* where the language unambiguously indicates it applies only to *injury suffered by the one deceived.*

Moreover, § 3 does not create a right of action for perjury but rather defines what a deceit is.[2] Section 4 provides:

"One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit."

■ The tort of fraud or deceit provides a remedy to a person who suffers damages due to his reliance upon another's willful misstatement of fact. When one testifies falsely on the witness stand, he is practicing deceit upon the jury and the judicial system. The *Copeland* court's notion that the litigant is a member of the particular class of persons being deceived by perjury is a legal fiction that 76 O.S.1981, § 4 was never intended to cover. The class of persons deceived by a perjurer includes only the finders of fact, in this case, the jury. Cooper is not a member of that class. Nothing in these statutes suggest perjury is actionable.

■ The *Copeland* court further concluded, and Cooper argues, that 23 O.S.1991, § 3, allows an action for perjury. This statute reads:

"Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

Cooper asserts he is entitled to damages under this provision because of the "unlawful act" of perjury allegedly committed by Dr. Parker–Hughey. However, the statute provides a definition of the term "damages", and does not create a right of action for perjury. More importantly, no legislative intent is evident in this statute, or the other cited statutes, to indicate an action for perjury abolishes the common law immunity afforded witnesses. Cooper finds no support for his action in these statutes. Thus, no Oklahoma statute specifically allows a civil cause of action against one who commits perjury.

Moreover, the *Copeland* court ignores the fact that the Oklahoma Legislature deems statements made in court to be "privileged communication" immune from actions for libel. 12 O.S.1991, § 1443.1. This statute and cases construing it provide a truer look at the state of the law in Oklahoma as to liability for witnesses for their testimony given in judicial proceedings than does a minority view of the perjury action rule. The *Copeland* decision finds no support in the law of Oklahoma or the majority of jurisdictions across the nation.

■ The general rule is that, absent a statute authorizing such an action, no action lies to recover damages caused by perjury. 70 C.J.S. *Perjury* § 4 (1987); 60 Am.Jur.2d *Perjury* § 132 (1987); Prosser & Keeton on Torts 872 (5th ed. 1984).[3] The only jurisdic-

---

**2.** Title 76 O.S.1991, § 3, provides:
"A deceit, within the meaning of the last section [76 O.S.1991, § 2] is either:
 1. The suggestion, as a fact, of that which is not true by one who does not believe it to be true.
 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.
 3. The suppression of a fact by one who is bound to disclose it, or who gives information

of other facts which are likely to mislead for want of communication of that fact; or,
 4. A promise, made without any intention of performing."

**3.** Those jurisdictions disallowing an action for perjury include: *Smith v. Sinclair*, 424 F.Supp. 1108 (W.D.Okla.1976); *Morgan v. Graham*, 228 F.2d 625 (10th Cir.1956); *Miller v. Glanz*, 948 F.2d 1562 (10th Cir.1991); *Snyder v. Faget*, 295 Ala. 197, 326 So.2d 113 (1976); *Lewis v. Swen-*

tion that recognizes a civil action for perjury is Maine which has a statute authorizing such an action, Me.Rev.Stat.Ann. tit. 14, § 870 (1980). *See Spickler v. Greenberg*, 644 A.2d 469, 470 n. 1 (Me.1994) (recognizing itself as the only state with a civil action for perjury).[4]

 Public policy reasons for the rule include: (1) the absolute immunity for witnesses in judicial proceedings as discussed in *Briscoe, supra*, i.e., encourages witnesses to speak freely without fear of civil liability, (2) perjury is a public offense and subject only to the criminal law, (3) the need for finality in judgments, (4) possibility of multiplicity of suits by parties dissatisfied by the outcome of trials, and (5) lack of precedent for such actions.

 This rule has strong public policy reasons supporting it, and we hereby adopt it as the rule in Oklahoma. Therefore, there being no statute authorizing a cause of action and allowing damages for perjury, we find no civil cause of action for perjury exists in Oklahoma. Unless the legislature of this state enacts a cause of action in tort for damages resulting from perjury, consequences for such perjury should come from the criminal law and not from damages. Any witness who wilfully commits perjury is subject to criminal prosecution for perjury, 21 O.S.1991, § 491, and the potential imprisonment for perjury by a witness in a felony criminal prosecution is twice as great as the penalty for perjury in any other trial. *See* 21 O.S.1991, § 500.

 Where a trial court reaches a correct judgment, it will be affirmed on appeal regardless of the trial court's reasons for rendition. *Benham v. Keller*, 673 P.2d 152 (Okla. 1983). Because we find the trial court correctly entered judgment in Dr. Parker–Hughey's favor on the ground of immunity, and because we hold that Oklahoma does not recognize Cooper's action for perjury, we need not address the question of Cooper's failure to appear.

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED, and the judgment of the district court is AFFIRMED.

All the Justices concur.

*son*, 126 Ariz. 561, 617 P.2d 69 (Ct.App.1980); *Agnew v. Parks*, 172 Cal.App.2d 756, 343 P.2d 118 (1959); *Wright v. Yurko*, 446 So.2d 1162 (Fla.Dist.Ct.App.1984); *Kessler v. Townsley*, 132 Fla. 744, 182 So. 232 (1938); *Shepherd v. Epps*, 179 Ga.App. 685, 347 S.E.2d 289 (1986); *John Allan Co. v. Brandow*, 59 Ill.App.2d 328, 207 N.E.2d 339 (1965); *Hermon v. Jobes*, 209 Ind. 196, 198 N.E. 316 (1935); *Beeck v. Kapalis*, 302 N.W.2d 90 (Iowa 1981); *Hokanson v. Lichtor*, 5 Kan.App.2d 802, 626 P.2d 214 (1981); *Lawson v. Hensley*, 712 S.W.2d 369 (Ky.Ct.App.1986); *Gusman v. Hearsey*, 28 La.Ann. 709 (1876); *Schaub v. O'Ferrall*, 116 Md. 131, 81 A. 789 (1911); *Hager v. Major*, 353 Mo. 1166, 186 S.W.2d 564 (1945); *Stolte v. Blackstone*, 213 Neb. 113, 328 N.W.2d 462 (1982); *Eikelberger v. Tolotti*, 96 Nev. 525, 611 P.2d 1086 (1980); *Stevens v. Rowe*, 59 N.H. 578 (1880); *Kantor v. Kessler*, 132 N.J.L. 336, 40 A.2d 607 (1945); *Newin Corp. v. Hartford*

*Accident & Indemnity Co.*, 37 N.Y.2d 211, 371 N.Y.S.2d 884, 333 N.E.2d 163 (1975); *Hawkins v. Webster*, 78 N.C.App. 589, 337 S.E.2d 682 (1985); *Brewer v. Carolina Coach Co.*, 253 N.C. 257, 116 S.E.2d 725 (1960); *Schmidt v. State Aerial Farm Statistics, Inc.*, 62 Ohio App.2d 48, 16 O.O.3d 85, 403 N.E.2d 1026 (1978); *Yoder v. Cole*, 232 Pa. 509, 81 A. 546 (1911); *Ginsburg v. Halpern*, 383 Pa. 178, 118 A.2d 201 (1955); *Lackey v. Lackey*, 886 S.W.2d 232 (Tenn.Ct.App. 1994); *Kale v. Palmer*, 791 S.W.2d 628 (Tex.Ct. App.1990); *Platts, Inc. v. Platts*, 73 Wash.2d 434, 438 P.2d 867 (1968); *Radue v. Dill*, 74 Wis.2d 239, 246 N.W.2d 507 (1976).

4. Prior to 1864 when the statute authorizing the cause of action was enacted, Maine did not recognize the tort of perjury. *See Dunlap v. Glidden*, 31 Me. 435 (1850).